IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SHANA M. WELCH, )
)
Plaintiff, )
)
v. ) No. 07 C 3465
)
UNITED STATES CELLULAR CORPORATION, )
)
Defendant. )

## OPINION AND ORDER

Plaintiff Shana Welch was formerly employed in managerial sales positions with defendant United States Cellular Corporation. At the time she was discharged, she was the Director of Telephone-Sales. Plaintiff is Hispanic with a dark complexion. Plaintiff alleges that, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981, she was discriminated against based on her race, national origin, and color. Her Complaint also contains references to sex discrimination and retaliation. Additionally, plaintiff alleges she was discriminatorily subjected to a hostile work environment. Defendant has moved for summary judgment as to all claims. In response to defendant's motion for summary judgment, plaintiff contends there is evidence to support that

she was discriminatorily discharged because Hispanic and of dark complexion.[1] She also contends she was subjected to a hostile work environment. She does not contend that she has any viable sex discrimination or retaliation claim.[2]

---

[1] Plaintiff contends she was discriminated against based on race, national origin, and/or color. Plaintiff does not address whether Hispanic should be considered a classification based on race or national origin. Defendant contends it is a classification based on race so any national origin claim should be dismissed. There is no dispute that Title VII prohibits discrimination against Hispanics and that plaintiff is Hispanic. For purposes of considering plaintiff's Title VII claims, it is unnecessary to resolve whether Hispanic is a racial, color, or some other classification. See generally Salas v. Wisconsin Dep't of Corrections, 2006 WL 1049469 *5-7 (W.D. Wis. April 17, 2006). Also, defendant does not dispute that discrimination against Hispanics is cognizable "race" discrimination under § 1981. See Hernandez v. City of Chicago, 2008 WL 904860 *3 (N.D. Ill. March 31, 2008); Cardenas v. Aramark Facility Serv., Inc., 2006 WL 1344057 *2 (N.D. Ill. May 11, 2006); Lopez v. Indiana-Kentucky Elec. Corp., 2006 WL 3247892 *11 (S.D. Ind. Aug. 17, 2006).

[2] Plaintiff's response to the motion for summary judgment is neither well-organized nor well-written. The judge's copy of her brief contains the case caption for this case, but contains argument concerning two plaintiffs from another case. The court relied on the electronic version of the brief which discusses plaintiff, but still failed to remove all references to a plaintiff in another case. A judge's copy of plaintiff's "additional material statement of undisputed facts" has been provided, but it is missing a page and no electronic version was filed. (Plaintiff should promptly file an electronic version.) The missing page is duplicated in defendant's response to this document. Plaintiff's factual discussion in her brief--the "summary of uncontested facts"--is a single paragraph that is more than three pages long. It lacks transitional connections between sentences making it difficult to follow. The argument section of the brief is difficult to follow because it contains numerous typos or grammatical errors, as well as being poorly structured. The court has done its best to understand plaintiff's contentions and has carefully considered the factual

On a motion for summary judgment, the entire record is considered with all reasonable inferences drawn in favor of the nonmovant and all factual disputes resolved in favor of the nonmovant. Scott v. Harris, 127 S. Ct. 1769, 1774, 1776 (2007); Fischer v. Avanade, Inc., 519 F.3d 393, 401 (7th Cir. 2008); Scaife v. Cook County, 446 F.3d 735, 738-39 (7th Cir. 2006). The burden of establishing a lack of any genuine issue of material fact rests on the movant. Hicks v. Midwest Transit, Inc., 500 F.3d 647, 651 (7th Cir. 2007); Creditor's Comm. of Jumer's Castle Lodge, Inc. v. Jumer, 472 F.3d 943, 946 (7th Cir. 2007); Outlaw v. Newkirk, 259 F.3d 833, 837 (7th Cir. 2001). The nonmovant, however, must make a showing sufficient to establish any essential element for which she will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Hicks, 500 F.3d at 651; Jumer, 472 F.3d at 946. Contrary to plaintiff's contention, the movant need not provide affidavits or deposition testimony showing the nonexistence of such essential elements. Celotex, 477 U.S. at 324. Also, it is not sufficient to show evidence of purportedly disputed facts if those facts are not plausible in light of the entire record. See Lorillard Tobacco Co. v. A & E Oil, Inc., 503 F.3d 588, 594-95 (7th Cir. 2007); Yasak v. Retirement Bd. of Policemen's Annuity & Benefit

---

assertions and citations to the record contained in plaintiff's Local Rule 56.1 submissions.

Fund of Chicago, 357 F.3d 677, 679 (7th Cir. 2004); NLFC, Inc. v. Devcom Mid-America, Inc., 45 F.3d 231, 236 (7th Cir. 1995); Covalt v. Carey Canada, Inc., 950 F.2d 481, 485 (7th Cir. 1991); Collins v. Associated Pathologists, Ltd., 844 F.2d 473, 476-77 (7th Cir. 1988); Freundt v. Allied Tube & Conduit Corp., 2007 WL 4219417 *2 (N.D. Ill. Nov. 29, 2007). As the Seventh Circuit has summarized:

> The party moving for summary judgment carries the initial burden of production to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Logan v. Commercial Union Ins. Co., 96 F.3d 971, 978 (7th Cir. 1996) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (citation and internal quotation omitted)). The moving party may discharge this burden by "'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325, 106 S. Ct. 2548. Once the moving party satisfies this burden, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The nonmovant must do more, however, than demonstrate some factual disagreement between the parties; the issue must be 'material.'" Logan, 96 F.3d at 978. "Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute." Id. (citation omitted). In determining whether the nonmovant has identified a "material" issue of fact for trial, we are guided by the applicable substantive law; "[o]nly disputes that could affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." McGinn v. Burlington Northern R.R. Co., 102 F.3d 295, 298 (7th Cir. 1996)

> (citation omitted). Furthermore, a factual
> dispute is "genuine" for summary judgment
> purposes only when there is "sufficient evidence
> favoring the nonmoving party for a jury to return
> a verdict for that party." <u>Anderson v. Liberty
> Lobby, Inc.</u>, 477 U.S. 242, 249, 106 S. Ct. 2505,
> 91 L. Ed. 2d 202 (1986). Hence, a "metaphysical
> doubt" regarding the existence of a genuine fact
> issue is not enough to stave off summary
> judgment, and "the nonmovant fails to demonstrate
> a genuine issue for trial 'where the record taken
> as a whole could not lead a rational trier of
> fact to find for the non-moving party . . . .'"
> <u>Logan</u>, 96 F.3d at 978 (quoting <u>Matsushita Elec.
> Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S.
> 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538
> (1986)).

<u>Outlaw</u>, 259 F.3d at 837.

Defendant contends the hostile work environment claim should be dismissed because not raised in plaintiff's EEOC charge. <u>See</u> <u>Cabrera v. Gregg</u>, 2003 WL 21277210 *7-8 (S.D. Ind. May 14, 2003); <u>West v. Ortho-McNeil Pharm. Corp.</u>, 2003 WL 260710 *6 (N.D. Ill. Jan. 29, 2003); <u>Coleman v. Pepsi-Cola Gen. Bottlers, Inc.</u>, 1998 WL 901675 *7 n.6 (N.D. Ill. Dec. 21, 1998). Plaintiff does not dispute that she failed to raise this claim before the EEOC nor does she make any argument why it should not be considered waived. Also, plaintiff does not respond to defendant's contention that it cannot be liable for a hostile work environment claim because defendant had adequate preventive and remedial procedures in place and plaintiff did not avail herself of those procedures or otherwise report the alleged

hostile conduct to management personnel. See generally Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765 (1998); Faragher v. City of Boca Raton, 524 U.S. 775, 807-08 (1998); EEOC v. V & J Foods, Inc., 507 F.3d 575, 578 (7th Cir. 2007); Rait v. Oshkosh Architectural Door Co., 2007 WL 702806 *9-10 (E.D. Wis. March 2, 2007).[3] Because plaintiff failed to raise a hostile work environment claim before the EEOC, her Title VII hostile work environment claim is subject to dismissal.

A hostile work environment claim, however, is also cognizable under § 1981. See Dandy v. United Parcel Serv., Inc., 388 F.3d 263, 271 (7th Cir. 2004). Defendant ignores that waiver based on failure to raise the hostile work environment claim before the EEOC does not apply to plaintiff's § 1981 hostile work environment claim based on being harassed as a Hispanic. The Ellerth/Faragher defense also applies to employment-related § 1981 claims against employers. See Joyner v. Archer-Daniels-Midland Co., 2007 WL 418921 *35-36 (C.D. Ill. Feb. 2, 2007). As is set forth above, plaintiff's failure to dispute the

---

[3]In light of plaintiff's limited argument regarding her hostile work environment claim and her complete failure to address the Ellerth/Faragher defense, it is unclear whether plaintiff is claiming a hostile work environment that is distinct from the tangible employment action of being discharged. To the extent plaintiff is claiming she was harassed by the member of management responsible for her discharge, the defense would not apply. See V & J Foods, 507 F.3d at 578; Huff v. Sheahan, 493 F.3d 893, 900-01 (7th Cir. 2007).

Ellerth/Faragher defense, leaves harassment by Rochelle Boersma, defendant's Vice President of Customer Service who made the decision to discharge plaintiff, as the only possible basis for a § 1981 hostile work environment claim. Plaintiff, however, does not point to sufficient evidence supporting that Boersma (or any other management official) subjected plaintiff to a subjectively and objectively hostile environment that was so severe or pervasive that it interfered with plaintiff's ability to perform her work. See Dandy, 388 F.3d at 271. The hostile work environment claim will be dismissed in its entirety.

The issue remaining to be determined is whether there is adequate evidence to support that plaintiff was discharged because she was Hispanic and/or of dark complexion. In considering the evidentiary submissions of the parties, all genuine factual disputes must be resolved and all reasonable inferences drawn in favor of plaintiff. As to many of plaintiff's factual assertions, defendant contends the factual assertions should be rejected because immaterial, not supported by the cited documents, based on hearsay, or based on other inadmissible types of evidence. Plaintiff also raises various objections to defendant's factual statements. In setting forth the undisputed material facts supported by the parties' submissions, these objections have been considered and resolved where necessary for determining a material fact. The facts taken

as true for purposes of ruling on plaintiff's discriminatory discharge claims are as follows.

Plaintiff is a Hispanic woman born in the United States. Her complexion is darker colored that Whites and darker than at least one other Hispanic employee of defendant. Prior to being hired by defendant, plaintiff had experience with at least four cable or satellite providers, including helping to establish one or more of the entities in new locations. Effective May 2, 2005, plaintiff was hired as defendant's Director of Sales for Central/Western Illinois, with responsibilities for 33 company-owned stores and approximately 100 franchised stores.

In 2006, defendant was in the process of establishing an internal telephone-sales (telesales) department. In 2006, plaintiff's Senior Director, Keith Blackman, told plaintiff that he and others believed she would be the right person to head a new project and wanted her to meet with Rochelle Boersma, the Vice President of Customer Service. Boersma interviewed plaintiff and made the decision to hire plaintiff as the Director of Telesales. Effective November 16, 2006, plaintiff began working in this new position. Jackie Staley, the Telesales Project Manager, was assigned to assist plaintiff. Plaintiff was responsible for starting the telesales division from scratch and to grow it from the ground level, including hiring and training staff and bringing in new customers.

At the time plaintiff began her new position, defendant had contracts with two outside vendors that performed telesales. Defendant's plan was to continue both contracts and eventually replace one of them with the internal telesales division. Defendant's Director of Customer Service Organization Patricia Haworth and manager Michelle Cox were responsible for managing the relationship with the two outside telesales vendors.

As of December 5, 2006, plaintiff anticipated hiring 100 employees for the telesales division, but was informed by Boersma that the department would not grow that fast. The next day, plaintiff apologized to Boersma for remarks plaintiff made when told about Boersma's views of the division's size.

On December 7, plaintiff, Haworth, and other employees of defendant were to meet with one of the outside telesales vendors. Plaintiff was there to learn about the vendor's operations and had been instructed not to reveal that defendant was developing internal telesales. Haworth had instructed defendant's employees, including Welch, that they should not start without Haworth present. Nevertheless, when Haworth was late due to a delayed plane, Welch began a tour of the facility given by one of the vendor's employees.

On December 11, Boersma received negative reports about plaintiff from three of Boersma's subordinates. It was reported to Boersma that plaintiff was making negative reports about the

telesales team, plaintiff was not following appropriate procedures and attempting to change priorities, and plaintiff had not followed instructions when meeting with the vendor.[4] On December 14, Boersma met with plaintiff to discuss these reports. Plaintiff was told that she had been acting like a bull in a china shop and was criticized as being passive aggressive and undynamic. Plaintiff was told to be a fly on the wall at meetings with telesales vendors and learn without standing out. Boersma also told her that she had lost her trust and would have to regain it. As to the incident at the vendor, plaintiff responded that Haworth had been late so they had been sitting around doing nothing for four hours. She also informed Boersma that Cox was providing little support and could not sufficiently answer certain queries. In light of their discussion, it was established that plaintiff would have weekly meetings with Staley, Haworth, Director of Strategic Initiatives Maty Kiser, and outside consultant Jeff Lewandowski to establish a 90-day strategic plan.

On January 15, 2007, plaintiff, Boersma, Staley, Haworth, Kiser, and Lewandowski met to discuss the 90-day plan they had prepared. During the meeting, Haworth and plaintiff had a

---

[4] Except for the last item, defendant does not attempt to establish the truth of these reports, only the fact that the information was reported to Boersma.

disagreement. After this meeting, Kiser privately told Boersma his opinion that he did not believe plaintiff had the temperament or aptitude to develop the telesales program. He commented that he and Lewandowski had done most of the work developing the 90-day plan and that he had received a number of complaints about plaintiff.

As of February 1, 2007, instructions were still in place regarding plaintiff being a fly on the wall at meetings with telesales vendors and not revealing that defendant had internal telesales plans. During a February 1 meeting with a telesales vendor, plaintiff asked questions, intervened in a discussion between Cox and the vendor to give her own recommendations, and pointed out a numerical error in the vendor's presentation. To plaintiff, the vendor appeared to respond positively to the correction and some of the questions. However, during a break late in the day, the vendor's manager told Cox that he and his staff were upset with plaintiff and that he thought she was rude and trying to find fault with the vendor's services. He asked what was going on and whether defendant was planning to terminate its relationship with the vendor. Cox apologized and tried to reassure him, but he persisted. Cox eventually revealed that plaintiff was the Director of Telesales and that defendant was developing internal telesales capabilities, but still intended to use the vendor.

The next day, Cox informed plaintiff about the conversation with the vendor's manager. Plaintiff called Haworth to apologize. Cox told plaintiff not to worry and that Haworth had told Cox to perform damage control. On February 2, Haworth passed on to Boersma the information that Cox had told her. Boersma drew the conclusion that plaintiff had not followed her instructions and had jeopardized defendant's relationship with the vendor. On February 5, Boersma recommended to defendant's Chief Operating Officer that plaintiff be terminated for poor performance, including, but not limited to, the failure to follow directions regarding meeting with the vendor. The COO approved the recommendation. On February 9, 2007, plaintiff was informed that her employment was being terminated effective February 15, 2007, with poor performance being given as the reason for the termination.

Plaintiff contends she has direct evidence of Boersma's discriminatory intent. Plaintiff's own testimony that she believes Boersma discharged her because she is a dark-skinned Hispanic and other employees' testimony that they believed Boersma treated Hispanics or persons with dark complexions less favorably do not constitute competent evidence of discrimination. See Nelms v. Modisett, 153 F.3d 815, 819 (7th Cir. 1998); Mills v. First Fed. Sav. & Loan Ass'n of Belvidere, 83 F.3d 833, 845 (7th Cir. 1996). Also, circumstantial evidence consisting of

plaintiff's and other employees' testimony about White employees being treated more favorably than plaintiff is not sufficient because lacking in sufficient details regarding comparables that are based on personal knowledge. Cf. Lucas v. Chicago Transit Auth., 367 F.3d 714, 730 n.16 (7th Cir. 2004); Derosena v. General Bd. of Pensions & Health Benefits of United Methodist Church, Inc., ___ F. Supp. 2d ___, 2008 WL 2271494 *10-11 (N.D. Ill. May 30, 2008). Plaintiff does not present sufficient direct evidence of discrimination.

Plaintiff must instead rely on the indirect method of proof set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and its progeny. Under the McDonnell Douglas framework, a prima facie case of employment discrimination creates a rebuttable presumption that the employer's actions, if unexplained, were the result of impermissible factors and shifts the burden of production to the employer to articulate some legitimate, nondiscriminatory reason for its actions. If the employer satisfies that burden, the plaintiff must then show that these articulated reasons are pretextual. Davis v. Con-Way Transp. Cent. Express, Inc., 368 F.3d 776, 784 (7th Cir. 2004). The plaintiff can do this by showing the impermissible factor was a motivating factor in the employer's decision or by presenting a material factual dispute as to the sincerity of the proffered reasons. Freeman v. Madison Metro. Sch. Dist., 231 F.3d 374, 379

(7th Cir. 2000); Collier v. Budd Co., 66 F.3d 886, 892 (7th Cir. 1995) (quoting Colosi v. Electri-Flex Co., 965 F.2d 500, 502 (7th Cir. 1992)). As to the latter, it must be shown (a) that the proffered reason had no basis in fact, (b) that the proffered reason did not actually motivate the decision, or (c) that the reason was an insufficient reason to motivate the decision. Holmes v. Potter, 384 F.3d 356, 361 (7th Cir. 2004); Wells v. Unisource Worldwide, Inc., 289 F.3d 1001, 1006 (7th Cir. 2002). "The focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise, or well-considered," Davis, 368 F.3d at 384 (quoting Stewart v. Henderson, 207 F.3d 374, 378 (7th Cir. 2000)).

Plaintiff relies on the following common formulation of the prima facie case for a discriminatory discharge claim: (a) plaintiff is a member of a protected class (Hispanic or dark-complexion); (b) she was meeting her employer's legitimate expectations; (c) she was subjected to an adverse employment decision (the discharge); and (d) similarly situated employees outside the protected class were treated more favorably. See Raymond v. Ameritech Corp., 442 F.3d 600, 610 (7th Cir. 2006). Defendant contends plaintiff cannot satisfy the second and fourth elements.

Plaintiff does not point to sufficient evidence of other similarly situated employees who were treated more favorably.

Therefore, she cannot satisfy a prima facie case of discriminatory discharge. Since plaintiff cannot make out a sufficient case of discrimination based on either the direct or indirect method, defendant is entitled to summary judgment dismissing the discriminatory discharge claims.

IT IS THEREFORE ORDERED that defendant's motion for summary judgment [18] is granted. The Clerk of the Court is directed to enter judgment in favor of defendant and against plaintiff dismissing plaintiff's cause of action with prejudice.

ENTER:

/s/ William T. Hart
UNITED STATES DISTRICT JUDGE

DATED: AUGUST 21, 2008